Rufus PERSON, Appellant
(Employee),

v.

SCULLIN STEEL COMPANY and Contin-
ental Casualty Company, Respondents
Employer and Insurer.

No. 58854.

Supreme Court of Missouri,
En Banc.

May 12, 1975.

Rehearing Denied June 9, 1975.

Morris B. Kessler, St. Louis, for appel-
lant.

Edward W. Warner, Evans & Dixon, St.
Louis, for respondents.

HOLMAN, Judge.

Appeal by claimant, Rufus Person (hereinafter referred to as Claimant), from a judgment of the Circuit Court affirming the decision of the Industrial Commission of Missouri, denying him benefits under the Workmen's Compensation Law. See Chapter 287, RSMo 1969, V.A.M.S., and particularly Section 287.120(1) V.A.M.S. Although the referee found the accident to be compensable as an unprovoked and unexplained assault, the Industrial Commission reversed the holding finding that the assault arose by reason of an earlier personal argument and that the 1969 amendment to Section 287.120(1) did not make the assault compensable. Claimant appealed to the St. Louis District of the Court of Appeals and that court adopted an opinion which reversed the judgment. Upon application of respondents we ordered the case transferred to this court. It will be finally determined here the same as on original appeal. Art. V, § 10, Mo. Const., V.A.M.S. We affirm.

The claimant and the assailant, Joe Barber, were employed by Scullin Steel Company, hereinafter referred to as Employer. By agreement claimant drove Barber to and from work every day. On November 7, 1970, claimant stopped by Barber's home, but was told by Mrs. Barber that her husband was not there. Claimant proceeded to drive to work. Upon arriving, he went to the washroom to change clothes and to prepare for his workday. While there, Barber entered the washroom and berated claimant for not picking him up, calling him a no-good S.O.B. Claimant testified that he told Barber that Mrs. Barber had told him that he was not at home and that Barber then offered him a drink of wine which he refused. It is claimant's version that he then left the washroom, made up his "paint stuff," and was carrying a bucket and sprayer to where he was to work when Joe Barber suddenly came up and shoved him, causing him to fall and to strike the left side of his face and head.

Also received into evidence was the following stipulation offered by the Employer and Insurer concerning the testimony of co-employee, Fred Bates:

That Mr. Bates would testify that he was in the washroom prior to work on the three to eleven shift at Scullin Steel Company on November 7, 1970, and observed Rufus Person and Joe Barber; that he heard Joe Barber call Rufus Person a no good son-of-a-bitch because Rufus had not stopped by Joe Barber's house to pick him up and bring him to work; that Rufus Person answered him by telling him Joe Barber's wife said he was not at home; that Joe Barber did not have a bottle of wine and offer wine to Rufus Person; that after they went to work and had been spray painting for about half an hour he saw and heard Rufus Person and Joe Barber talking in a loud and angry tone, but the distance precluded him from hearing what they were shouting at each other about; that Rufus Person was holding equipment in both hands and he, Joe Barber, shoved Rufus Person, causing him to fall and injure himself.

On the basis of the foregoing evidence the referee found that the original dispute had ended in the washroom and a sufficient cooling off period had elapsed so that the assault was not a continuation of that dispute. Finding no evidence as to the reason for the assault, the referee found it "unprovoked and unexplained," and compensable under the 1969 amendment to Section 287.120, RSMo, V.A.M.S.

In reversing the referee's award, the Industrial Commission, while agreeing that the assault was unprovoked, found that the testimony of both the employee and co-employee showed directly or by inference how the injury occurred and therefore no presumption existed that the assault arose out of claimant's employment. The Commission further found that the employment merely furnished an occasion for the assault which was "a personal matter uncon-

nected with the work duties of either Person or Barber."

Claimant contends that the Industrial Commission misconstrued the 1969 amendment to Section 287.120(1), RSMo, V.A. M.S. (the section of the Workmen's Compensation Statute which defines compensable accident) which, claimant argues, makes compensable all assaults except those wherein the claimant is the aggressor; that the determination by the Industrial Commission that the assault arose from an earlier personal quarrel is not supported by the evidence; and that even if the finding that the assault arose out of the earlier dispute is supported by the evidence the injury is compensable since the quarrel, which concerned claimant's failure to bring Barber to work, was connected with the employment.

Prior to amendment Section 287.120(1) read:

If both employer and employee have elected to accept the provisions of this chapter, the employer shall be liable irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person.

The 1969 amendment added the following sentence to the above paragraph:

The term 'accident' as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.

Claimant contends that since the Industrial Commission found that he did not provoke the assault, his injuries are compensable. The Commission, however, concluded that if the legislature had intended

that result ". . . the single term 'accident,' used in the amendment, would have been expanded to read 'accident arising out of and in the course of employment.' "

■ In construing a statute, in an endeavor to determine the legislative intent, it is appropriate to consider its history, the presumption that the legislature had knowledge of the law, the surrounding circumstances and the purpose and object to be accomplished. Protection Mutual Insurance Co. v. Kansas City, 504 S.W.2d 127 (Mo.1974).

At the outset of our task of seeking to determine the legislative intent involved in the 1969 amendment of the instant statute we consider it helpful to review the state of the law prior to that amendment concerning the compensability of injuries received when employees are assaulted. Such is well stated in Liebman v. Colonial Baking Company, 391 S.W.2d 948, 951 (Mo.App.1965), as follows:

"The assault doctrine has been fully developed in Missouri. It is possible to illustrate its scope and method by examples remarkably free of the contradictions that have attended its use in some other jurisdictions. Assaults divide conveniently into three classes. Larson's Workmen's Compensation Law, Sec. 7, p. 48 et seq.; Sec. 11, p. 131 et seq.; Kelly [Kelley] v. Sohio Chemical Co., Mo.App., 383 S.W.2d 146, 147.

"1st: Those which are invited by the dangerous nature of the employee's duties, or by the dangerous environment in which he is required to perform them, or are the outgrowth of frictions generated by the work itself, but which in either event, are invariably revealed to be the result of some risk directly attributable to the employment. Injuries resulting from assaults of that character are compensable in Missouri. Typical examples may be found in Hacker v. City of Potosi, Mo., 351 S.W.2d

760, where a policeman was shot while investigating a traffic violation, and in Macalik v. Planter's Realty Co., Mo.App., 144 S.W.2d 158, where a foreman was murdered in retaliation for having fired the assailant's son. See also, Reed v. Sensenbaugh, 229 Mo.App. 883, 86 S.W.2d 388; Carlton v. Henwood, 232 Mo.App. 165, 115 S.W.2d 172; O'Dell v. Lost Trail, Inc., 339 Mo. 1108, 100 S.W.2d 289; Kaiser v. Reardon Co., 355 Mo. 157, 195 S.W.2d 477; Stephens v. Spunk Iron & Foundry Co., 358 Mo. 372, 214 S.W.2d 534; Pearce v. Modern Sand & Gravel Co., 231 Mo.App. 823, 99 S.W.2d 850; Keithley v. Stone & Webster Engineering Corp., 226 Mo.App. 1122, 49 S.W.2d 296; and Daugherty v. City of Monett, 238 Mo.App. 924, 192 S.W.2d 51.

"2nd: Those committed in the course of private quarrels that are purely personal to the participants. Injuries resulting from assaults of that character are non-compensable in Missouri. Typical examples may be found in Lardge v. Concrete Products Mfg. Co., Mo., 251 S.W.2d 49, where the employee was struck in retaliation for his charge that the assailant had stolen his wine, and in Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421, where the fatal quarrel was triggered by the participants' community of interest in the victim's wife. See also, Toole v. Bechtel Corp., Mo., 291 S.W.2d 874, and Staten v. Long-Turner Const. Co., Mo.App., 185 S.W.2d 375.

"3rd: Irrational, unexplained or accidental assaults of so-called 'neutral' origin, which, although they occur 'in the course of' the victim's employment, cannot be attributed to it on any more rational basis than that the employment afforded a convenient occasion for the attack to take place. In some jurisdictions that circumstance is regarded as a sufficient reason for awarding compensation; but not in Missouri. Examples may be found in Ries v. De Bord Plumbing Co., Mo.App., 186 S.

W.2d 488, where the employee was assaulted at his assigned place of work by a stranger with no apparent motive; In Kelly [Kelley] v. Sohio Chemical Co., supra, where the employee was struck down from behind in her office by an unknown assailant for no discoverable reason; in May v. Ozark Central Telephone Co., supra, [Mo.App., 272 S.W.2d 845], where, for the sake of the discussion, it was assumed that the employee had been accidentally shot by a hunter while working in a wooded area; in Long v. Schultz Shoe Co., supra, [Mo.App., 257 S.W.2d 211], where the employee was struck by a stray bullet in the course of a shooting scrape between other employees on the premises; and in Scherr v. Siding & Roofing Sales Co., supra, [Mo.App., 305 S.W.2d 62], where a salesman calling on a customer at the latter's place of business was hit by an object thrown wildly by another visitor on the premises.

"In every Missouri case involving an assault of 'neutral' origin compensation has been denied. The rationale in each, insofar as it is pertinent to the issue before us, has been that the risk of unprovoked assault is no more logically attributable to one man's employment than to another's unemployment, and that the mere fact that the employment provided a convenient opportunity for the assault to take place, as by bringing the victim and his assailant together at the point where it occurred, is insufficient to establish any causal connection between the employment and the injury, or to show that the latter was a rational consequence of the former."

It is obvious that the legislature in enacting the 1969 amendment intended to enlarge the area of compensability for employee assault victims. All parties to this action agree that the amendment was enacted in an effort to remedy an alleged defect in the law which had resulted in decisions against the employees in the Kelley and Liebman cases.

In Kelley, the claimant was struck on the head by an unknown assailant and was rendered unconscious when she was alone in an inner office during her noon hour. This court, affirming the decision of the Industrial Commission, denied compensation. It was held that ". . . if there is evidence of occurrences, circumstances or physical condition which show, directly or by inferences, how the injury occurred, then the matter should be and will be decided on that evidence; and that if a presumption be deemed to have arisen in such instances, it disappears, being merely a procedural invention in the first place . . ." Kelley v. Sohio Chemical Company, 392 S.W.2d 256–7 (Mo.1965). The fact that it was shown that the office was not disturbed in any manner and that there was no evidence of an attendant robbery or theft was deemed sufficient to rebut any presumption that the assault arose out of the employment.

In Liebman v. Colonial Baking Co., supra, the claimant was employed by defendant to make deliveries of the latter's products by truck. While making a delivery, the claimant was assaulted from behind by a drunken stranger, without motive or provocation. As indicated, compensation was denied.

It is the principal contention of claimant that the amendment in question should be construed as meaning that in every instance where an employee is assaulted he is entitled to compensation unless it appears that he provoked the "violence or assault." He contends that "provoked" means aggressor in bringing on the assault.

We do not believe that the legislature intended to make such a sweeping change in the basic compensation law of this state.

It has long been settled that: "An injury arises 'out of' the employment when there is a direct causal connection between the injury and the employment; and, even though the precise injury need not have been anticipated, it must have been a rational consequence of some hazard connected with the employment. Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211; May v. Ozark Central Tel. Co., Mo. App., 272 S.W.2d 845. This issue must be decided in each case upon its own facts and no formula is applicable. Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421.

"It has been held that when an employee is found injured at a place where his duty required him to be, a rebuttable presumption arises that he was injured in the course of and in consequence of his employment. Mershon v. Missouri Public Service Corp., 359 Mo. 257, 221 S.W.2d 165, 167. But it has also been held that such presumption, being merely procedural, disappears when the employer produces substantial rebutting evidence on the issue, and that thereafter the issue must be determined solely on the evidence as though no presumption had ever existed. Duff v. St. Louis Mining and Milling Corp., Banc, 363 Mo. 944, 255 S.W.2d 792; . . ." Toole v. Bechtel Corporation, 291 S.W.2d 874, 880 (Mo.1956).

In the case at bar the Industrial Commission found that: ". . . Person sustained an 'accident' as that term is contemplated by Sections 287.020–2 and 287.120–1, V.A.M.S. We do not find, however, that the accident by reason of an unprovoked assault arose out of and in the course of Person's employment with Scullin Steel. Instead, we find that the employment merely furnished an occasion for the assault which we find was a personal matter unconnected with the work duties of either Person or Barber." Claimant says that the evidence was insufficient to support that finding; that there had been ample time for tempers to cool because 30 minutes had elapsed since the argument in the locker room; that there was no evidence concerning the immediate cause of the assault and

hence the presumption would prevail and the assault should be ruled compensable.

■ In considering claimant's evidentiary contention we should be mindful: ". . . of the general rules that as to fact questions the reviewing court does not substitute its judgment for that of the commission; that such an award is to be set aside only when not supported by substantial evidence or when clearly contrary to the overwhelming weight of the evidence; that such evidence, including all reasonable legitimate inferences, will be viewed in a light most favorable to the award; that the commission could judge the credibility of the witnesses; and that burden of proof is on claimant to prove his claim." Merriman v. Ben Gutman Truck Service, Inc., 392 S.W.2d 292, 296 (Mo. 1965). While there is no direct evidence as to Barber's state of mind at the time of the assault we conclude that a view of the evidence favorable to the award clearly supports the commission's finding since such finding is a legitimate inference to be drawn from the previous occurrences in the locker room.

■ As indicated by the foregoing, the finding of the commission has placed this assault in the second class, i. e., those committed in the course of private quarrels personal to the participants, which have heretofore been ruled non-compensable. The question presented, therefore, is whether the 1969 amendment should be construed as changing the established rule relating to the second class. We rule that question in the negative. In a general way we have considered that a construction in accord with claimant's contention would be contrary to the established rule in most all jurisdictions. See, 99 C.J.S. Workmen's Compensation, Sections 226, 227. More specifically, however, we have the view that it was the intent of the legislature only to change the rule in regard to the third class, i. e., the so-called assaults of "neutral" origin. As stated, this amendment was motivated by the Liebman and Kelley decisions, both of which involved third class or neutral assaults. Under our construction of the amendment the legislative purpose was accomplished. We think it can confidently be said that had the amendment been enacted prior to the Liebman and Kelley cases it would have been ruled in each case that the injury would have been compensable.

■■ Finally, claimant contends in the alternative that if the court concludes, as we have done, that the finding that the assault arose out of the dispute over claimant's failure to bring the assailant to work is supported by substantial evidence, that his injuries are still compensable because the quarrel was work-related rather than personal. It is the general rule that injuries sustained in going to and from work do not arise out of and in the course of the employment. See Reneau v. Bales Electric Company, 303 S.W.2d 75, 77 (Mo.1957). In light of that rule, it cannot logically be held that a quarrel arising from the failure of one employee to bring another to work is the result of a risk directly attributable to the employment. The following statement is applicable: "Surely it would be going too far to say that every assault arises out of the employment if it can be proved that the acquaintance of the parties came about through the employment. If the friction and strain arise not because of the enforced contacts resulting from the duties of the employment, but rather because the two employees, who met each other on the job, choose to enter into a purely private relationship just as they might if they had met elsewhere, and if in the course of the ups and downs of that private relationship a private quarrel develops, the quarrel may well be treated the same as a domestic quarrel brought to the employment." Larson's Workmen's Compensation Law, Section 11.22.

The final award of the Industrial Commission denying benefits to claimant is not clearly contrary to the law and is supported by competent and substantial evidence. The judgment of the circuit court sustaining the decision of the Industrial Commission should therefore be affirmed. It is so ordered.

DONNELLY, C. J., and SEILER, HENLEY and FINCH, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed, MORGAN, J., dissents and concurs in dissenting opinion of BARDGETT, J.

BARDGETT, Judge.

I respectfully dissent.

The principal opinion points out that the 1969 amendment to § 287.120 was enacted to remedy an alleged defect in the law which had resulted in decisions against compensation in the *Kelley* and *Liebman* cases, cited in the principal opinion. It also states that had the 1969 amendment been in effect at the time *Kelley* and *Liebman* were decided, compensation would have been awarded.

The majority opinion in Kelley v. Sohio Chemical Co., 392 S.W.2d 255 (Mo.banc 1965), denied compensation on a finding "that the assault had no connection with and did not arise out of the employment." l. c. 257. In *Kelley* the claimant was struck on the head by an unknown assailant on the employer's premises during the noon hour.

In Liebman v. Colonial Baking Co., 391 S.W.2d 948 (Mo.App.1965), the claimant was a delivery man for the baking company. As he was walking toward a customer's place of business, he was assaulted from behind by a drunken stranger without motivation or provocation.

In *Liebman,* the court of appeals said that while the assault occurred "in the course of" Liebman's employment the question was whether it arose "out of" the employment. l. c. 950. The court held the assault did not arise out of the employment and affirmed the denial of compensation.

It is true that both cases involved what appears to be unprovoked assaults on an employee, but the denial of compensation in neither case was premised on the fact that the assault was unprovoked. It was based upon the finding that the injury did not arise out of the employment.

Now, if the 1969 amendment to § 287.120 was adopted to correct the alleged defect in the law which resulted in the decisions against the employees in *Kelley* and *Liebman,* then the corrective legislation must, of necessity, have been directed to and, in my opinion, was directed to the basis upon which the compensation was denied in *Kelley* and *Liebman.*

The principal opinion recognizes that the 1969 amendment was to make compensable subsequent injuries similar to the ones in *Kelley* and *Liebman.* That being so, it seems clear to me that the legislature's attention was focused on the courts' holdings that in *Kelley* and *Liebman* the injuries did not arise out of and in the course of the employment. Their method of correcting the alleged defect in the law as demonstrated by *Kelley* and *Liebman* was to provide that "accident" as used in 287.120 shall include "injury or death of the employee caused by the unprovoked violence or assault against the employee by any person."

Sec. 1.010, RSMo 1969, V.A.M.S., provides, *inter alia,* ". . . all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof."

The principal opinion appears to hold that the true intent and meaning of the

1969 amendment was to make compensable that type of injury held to be noncompensable in *Kelley* and *Liebman*. Again—*Kelley* and *Liebman* were decided on the basis that those injuries did not arise out of the employment. This conclusion was not arrived at because the assaults or violence there involved were provoked or unprovoked but rather because the risk of common assault on the street in *Liebman* and the exposure to the assault in *Kelley* could not have been rationally foreseen—the risk did not arise as a direct causative result of the nature of the employment.

The legislature was addressing itself to this problem when it adopted the 1969 amendment. In my opinion, the legislative declaration that "accident" shall include injury or death of the employee caused by the unprovoked violence or assault against the employee by any person means that, when an employee while engaged in his employment is assaulted without provocation on the employee's part, that injury is compensable.

In my opinion, the fact question in the instant case is whether the employee-claimant, Rufus Person, provoked the assault upon him. The answer to that question, under the evidence, is that he did not provoke the attack. Therefore, the injury, in my opinion, is compensable.

In view of the 1969 amendment, I think it is entirely too tenuous to use the reason the assailant attacked the employee as the criterion for compensability unless it is shown that the reason for the attack was such as would constitute a defense under that amendment—provocation by the employee. That reason—provocation—is the only reason the law allows as a defense to a claim for injuries that arise during the course of employment, in my opinion.

For the foregoing reasons, I would hold the injury compensable under the Workmen's Compensation Act, and therefore I dissent.